IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Industrial Automation Supply, LLC, | ) | |
| A North Dakota limited liability company, | ) | |
| Plaintiff, | ) | **Order Denying Plaintiff's Motion for** |
| vs. | ) | **Partial Summary Judgment and** |
| | ) | **Denying Defendant's Cross-Motion for** |
| United Rentals Highway Technologies, | ) | **Partial Summary Judgment** |
| Inc., a Massachusetts corporation; | ) | |
| United Rentals (North America), Inc., a | ) | Case No. 3:04-cv-99 |
| Delaware corporation; and United Rentals | ) | |
| Highway Technologies, L.P., a Texas | ) | |
| limited partnership | ) | |
| | ) | |
| Defendants. | ) | |

Before this Court is a Motion for Partial Summary Judgment as to the issue of liability, filed by Industrial Automation Supply, the Plaintiff in this matter.  The Defendant, United Rentals, has filed a Cross-Motion seeking Summary Judgment as to the applicability of section 51-20.1-01 of the North Dakota Century Code ("N.D.C.C.").

**Summary of Decision**

Because there exists a genuine issue of material fact as to whether a valid contract was formed, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment on the issue of liability.  The inability to conclusively determine the presence of an enforceable contract at this time also renders Defendant's Cross-Motion for Partial Summary Judgment as to the applicability of N.D.C.C. 51-20.1-01 improper.  As such, the Court **DENIES** Defendant's Cross-Motion for Partial Summary Judgment.

**Factual Background**

The following are undisputed facts.  Plaintiff Industrial Automation Supply, LLC ("IAS") entered into agreement dated October 4, 2002 with Defendant United Rentals Highway Technologies, L.P. ("United Rentals").  This agreement specified that United Rentals, in exchange for sales distribution rights, was to purchase and sell a specified number of RAM tab-applicators, RAM tab cutters, and RAM traffic cone setters/retrievers, which would be designed and supplied by IAS.  These products are used in highway construction projects and were marketed primarily towards highway construction firms and governmental transportation agencies.

If United Rentals did not purchase and sell the minimum quota set forth in the agreement, it was required to purchase as many items as necessary to reach the minimum number.  The agreement did not contain information as to the price of the machines United Rentals was required to purchase and sell, save for a single reference, itself used solely in the context of discussing the agreement's commission structure.  In 2002, United Rentals was required to sell 10 tab applicators, 10 tab cutters, and 25 cone machines.  After failing to sell the minimum number of machines for 2002, United Rentals purchased the requisite minimum number of machines to meet that year's quota.  In 2003, United Rentals' obligation increased nearly ten-fold, being required to purchase or sell 100 tab applicators, 100 tab cutters, and 175 cone setters/retrievers.  For the 2003 year, United Rentals did not sell the requisite amount, nor did it purchase enough machines to satisfy the minimum quota.

IAS currently moves for Partially Summary Judgment as to United Rentals' liability. United Rentals counterclaims that upon termination of a agreement between a heavy construction

equipment dealer and distributor, the dealer is entitled to full reimbursement from the distributor for one-hundred percent of the net-cost of such equipment, in accordance with N.D.C.C. 51-20.1-02.

**Summary Judgment Standard**

The Court may properly grant summary judgment only where the pleadings, discovery, and affidavits show that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). At the summary judgment stage, a Court's function is not weigh the evidence and decide the case on its merits, but rather determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, 477 U.S. 242 (1986). On a motion for summary judgment a court is to view the proffered evidence in favor of the nonmoving party, reading all justifiable factual inferences in its favor. Id. at 250. "An issue of material fact is genuine if it has a real basis in the record." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). "A genuine issue of fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson, 477 U.S. at 248).

In a diversity action, such as the one here, the Court is to apply the substantive law of the forum state. See e.g., Engleson v. Little Falls Area Chamber of Commerce, 362 F.3d 525, 528 (8th Cir. 2004). North Dakota has adopted the Uniform Commercial Code, which is reflected in various provisions of the North Dakota Century Code.

**Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability**

Plaintiff IAS seeks partial summary judgment on the issue of liability. Plaintiff specifically

3

contends that Defendant breached its contractual obligation by failing to purchase a minimum quota of products as specified in the contract. Whether a contract was breached is a question of fact. Trinity Health v. N. Cent. Emergency Servs., PC, 662 N.W.2d 280, 287 (citing Wachter v. Gratech Co., Ltd, 608 N.W.2d 279 (N.D. 2000)). The language of the contract reads in relevant part:

> 9. **SALES QUOTA**. Distributor agrees to use its best efforts to sell the number of Products set forth in Exhibit D (hereinafter referred to as "Quota") during the years 2002 and 2003. If Distributor fails to meet the minimum Quota for any of the Products, Distributor shall be required to purchase the remaining Products to fulfill the Quota each year.

The contract sets forth the minimum quotas: Year 2002: 10 Tab Applicators; 10 Tab Cutters; 25 Cone Machines; Year 2003: 100 Tab Applicators; 100 Tab Cutters; and 175 Cone Machines.

The Court's role when construing contracts is to give effect to the mutual intention of the parties as it existed at the time of contracting. Pamida, Inc. v. Meide, 526 N.W.2d 487, 490 (N.D. 1995); NDCC § 9-07-03. The intent of the parties is best revealed from the language of the contract itself. Jorgensen v. Crow, 466 N.W.2d 120, 123 (N.D. 1991); N.D.C.C. § 9-07-04. In the instant case, a finding of liability is first dependent on ascertaining whether a contractual breach has occurred which first requires an inquiry as to whether a valid contract had been formed. The formation of a contract, in turn, requires a meeting of the minds. Yetter v. Goolsby, 144 N.W.2d 1075 (N.D. 1913); Gunsch v. Gunsch, 67 N.W.2d 311 (N.D. 1954). This determination is a question of fact. Blair Int'l v. LaBarge, Inc., 675 F.2d 954, 957 (8th Cir. 1982); Hall v. Mutual Life Serv. Life Ins. Co., 623 N.W.2d 32, 35 (N.D. 2001)

Defendant argues that the contract between IAS and United Highway Rental was invalid and unenforceable due to the omission of the price of the products supplied by IAS. IAS contends that

price is not a material term. Insofar as a contract will not automatically fail due to the omission of a price term, Defendant is correct. Where parties intend to enter into a contract where nothing is said as to price, the actual price is set at the time of delivery. N.D.C.C. § 41-02-22(1)(a). The eventual price, however, must be a reasonable one and it must be set in good faith. N.D.C.C. § 41-02-22(2). Here, the only indication as to price anywhere in the distributor agreement is one listed in a parenthetical for the TPM2100, and then it is included only for the illustrative purpose of describing the agreed-upon commission structure.

Plaintiff contends that even when a contract is missing a price term, repeated dealings between the parties at a price not specified in the contract will serve as an acceptance of that price term by the parties. N.D.C.C. § 41-02-15 provides the foundation for this argument.

**§ 41-02-15    Course of performance or practical construction**

1. If the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.

Here, the Defendant accepted delivery for the Plaintiff's products and, after failing to meet the quota for 2002, purchased the requisite number of products to meet that sales quota. Still, it is questionable whether this sole year of business can establish Defendant's acquiescence to Plaintiff's price via course of performance. Further, the question as to whether the price set by IAS is reasonable, as required by N.D.C.C. § 41-02-22(2), is a question of fact. Further, the language of the statute labels prior acceptance as "relevant" to a determination of acquiescence, but does not render such dispostive. The Court reads this to mean that previous acceptance of goods is useful in

assisting a fact finder in determining whether or not Defendant accepted Plaintiff's price terms. The Court declines to enter summary judgment as to the issue of liability based partly on the above arguments, but also because finding acquiescence to a contract which is ten-fold larger than the one actually performed, without the aid of a trial, could lead to an unconscionable result. Rather than apply the contract piecemeal, which is within this Court's purview under N.D.C.C. 41-02-19, this Court reserves the question of whether Defendant accepted Plaintiff's price terms for trial. Based on these facts, this Court finds that a reasonable jury could find that the course of dealings between the parties was not sufficient to establish Defendant's acquiescence to Plaintiff's price terms.

In the alternative, Defendant argues that if a contract had been formed in the absence of a price term, Defendant's performance was excused under the doctrines of impossibility, impractibility and frustration. The doctrine of impossibility serves to excuse a party's performance where the occurrence of an unexpected act, or the nonoccurrence of an expected act, renders performance impossible or impracticable because of unreasonable difficulty, expense, or loss. Tallackson Potato Company, Inc. v. MTK Potato Company, 278 N.W.2d 417, 424 (1979); Restatement (Second) of Contracts § 261. Defendant's briefs have emphatically stated that the price Plaintiff demands for its machinery makes the products extremely difficult to sell. Of course, despite Defendant's rhetoric, it is not "impossible" to sell the machinery at that price, it is merely much more difficult. Given this, the Court rejects the defense of impossibility insofar as Defendant means this term to represent something other than impracticability or frustration. When impracticability or frustration impairs contract performance, the obstacle to performance must arise, or become known, after the parties enter into a contract. "Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a

6

basic assumption on which the contract was made, his duty to render performance is discharged, unless the language or the circumstances indicate to the contrary." DePape v. Trinity Health Sys., 242 F. Supp. 2d 585 (N.D. Iowa 2003) (citing Restatement (Second) of Contracts § 261). The source of this impracticability should not be contemplated or known by the parties at the time of contracting. Black's Law Dictionary encapsulates this in its definition of both "impracticability and "commercial impracticability."

> **Impracticability**...A fact or circumstance that excuses a party from performing an act esp. a contractual duty because (though possible) it would cause extreme and unreasonable difficulty. • duty must become much more difficult or much more expensive to perform, and this difficulty or expense must have been unanticipated.
>
> > *commercial impracticability*. The occurrence of a contingency whose nonoccurrence was an assumption of the contract, as a result of which the party cannot perform.

Black's definitions for "frustration" and "commercial frustration" likewise echo the requirement of an unforseen event in order to excuse performance:

> **Frustration** 1. The prevention or hindering of the attainment of a goal, such as contractuarl performance.
>
> > *commercial frustration*. An excuse for a party's performance because of some unforeseeable and uncontrollable circumstance - Also termed *economic frustration*.

The theoretical underpinning of the impossibility doctrine is that the change in circumstances has so fundamentally altered the nature of the agreement that it no longer manifests the original, mutual intent of the parties. "The important question is whether an unanticipated circumstance has made

the performance of the promise virtually different from what should reasonably have been within the contemplation of both parties when they entered into the contract." Williams Grain Co. v. Leval & Co., 277 F.2d 213, 215 (8th Cir. 2000) (citing 6 Williston on Contracts, sec. 1932, p. 5411).

Upon an inspection of the entire record, there is no evidence of failure of a presupposed condition. Nor is there evidence of regulatory or macroeconomic changes that would alter the price of the products supplied by Plaintiff. The doctrine of impossibility, impracticality, or frustration does not serve to nullify an otherwise enforceable contract solely because one party's unwise or unsound business decision. Where, like here, the parties entered into an agreement with full knowledge and acceptance of the risks involved, the doctrine of impossibility can afford no relief. This Court finds that no evidence exists to support a defense of impossibility, impracticality of frustration. The Court must still deny summary judgement on the issue of liability due to existence of disputed material facts, in particular, whether a valid contract was ever formed between the parties. The Court **DENIES** Plaintiff's Motion for Partial Summary Judgment as to the issue of liability.

### Defendant's Counterclaim

Defendant has counter-claimed that N.D.C.C. Chapter 51-20.1, entitled "Heavy Construction Equipment Franchise Termination," governs the disposition of the IAS equipment that United Rentals currently holds in stock. N.D.C.C. 51-20.1-02 allows "retail dealers" to recover the cost of equipment and parts for this heavy construction equipment upon a termination upon the discontinuance of a contract with the distributor. 51-20.1-02 reads in relevant part:

> **51-20.1-02. Retail dealers may recover cost of equipment and parts upon discontinuance of contract with distributor**. If a retailer dealer has entered into a written contract with a distributor wherein in the retail dealer agrees to maintain a stock of heavy construction equipment...the distributor shall pay to the retail dealer
>
> > 1. A sum equal to one hundred percent of the net cost of all unused, complete heavy construction equipment...

Defendant contends that, in accordance with the above provision, the machinery it currently holds in stock must be repurchased by IAS. Plaintiff makes three arguments as to the inapplicability of 51-20.1-02. First, Plaintiff argues that the machinery in question is not "heavy construction equipment," but rather safety equipment. Secondly, IAS contends that Defendant is a distributor of the machinery, not a dealer, and therefore is not protected by the provisions of 51-20.1-02. Lastly, IAS argues that the legislative history behind 51-20.1-02 suggests that Defendant's interpretation ultimately acts to contrary to the spirit and purpose of the statute.

Chapter 51-20.1 provides definitions that are illuminating as to Defendant's first two arguments. 51-20.1-01 reads in relevant part:

> **51-20.1-01. Definitions**. As used in this chapter, unless the context requires otherwise:
>
> > 1. "Distributor" means any person involved in manufacturing, wholesaling, or distributing heavy construction equipment...who is authorized to, and does, enter into a written contract with a retail dealer.
> >
> > 2. "Heavy construction equipment" means self-propelled or pull-type construction machinery, and accessories therefor, primarily used in projects requiring paving, earthmoving, or bridge, road, highway, and commercial building construction.
> > ...
> > 4. "Retail dealer" means every person engaged in the business of selling heavy construction equipment at retail.

This Court notes that however instructive these statutory definitions may be, the question of whether 51-20.1-02 is applicable cannot be resolved through summary judgment. The plain language of the statute requires the discontinuance of an existing contract. This Court has, above, already concluded that the question of whether a contract was formed cannot be resolved at the summary judgment stage. Because resolution of this issue is a prerequisite to determining the applicability of 51-20.1-02, the Court must deny summary judgement as to Defendant's Counterclaim.

### Conclusion

The Court finds that there exists a genuine issue of material fact as to whether a valid contract was formed and therefore Plaintiff's Motion for Partial Summary Judgment is **DENIED**. Further, the Court cannot grant summary judgment as to the applicability of N.D.C.C. 51-20.1-02 absent a valid contract. As such, Defendant's Motion for Partial Summary Judgment is likewise **DENIED**.

_____
Ralph R. Erickson, District Judge
United States District Court

**IT IS SO ORDERED.**

Dated this 27th day of January, 2006.